# EXHIBIT A

FILED
5/12/2023 8:18 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L004921
Calendar, R
22690844

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

**Summons - Alias Summons**            **(08/01/18) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**JORDAN ANCEL**

(Name all parties)

v.

Case No. _____

**JENNIFER KARUM and MONICA RUIZ**

440 Hanlem
Glenview, IL

☐ **SUMMONS**    ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

## Service List

**Jennifer** Karum
440 Harlem Ave
Glenview, IL 60025

Monica Ruiz

Summons - Alias Summons                                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 64600                          Witness: _____

Atty Name: Loftus & Eisenberg                5/12/2023 8:18 AM IRIS Y. MARTINEZ

Atty. for: Plaintiff
                                          _____
Address: 161 N. Clark Suite 1600
                                          DOROTHY BROWN, Clerk of Court
City: Chicago

State: IL    Zip: 60603                   Date of Service: _____
                                          (To be inserted by officer on copy left with
Telephone: 312-899-6625                   Defendant or other person):

Primary Email: alex@loftusandeisenberg.cc

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

- ⦿ Richard J Daley Center
  50 W Washington
  Chicago, IL 60602

- ○ District 2 - Skokie
  5600 Old Orchard Rd
  Skokie, IL 60077

- ○ District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008

- ○ District 4 - Maywood
  1500 Maybrook Ave
  Maywood, IL 60153

- ○ District 5 - Bridgeview
  10220 S 76th Ave
  Bridgeview, IL 60455

- ○ District 6 - Markham
  16501 S Kedzie Pkwy
  Markham, IL 60428

- ○ Domestic Violence Court
  555 W Harrison
  Chicago, IL 60607

- ○ Juvenile Center Building
  2245 W Ogden Ave, Rm 13
  Chicago, IL 60602

- ○ Criminal Court Building
  2650 S California Ave, Rm 526
  Chicago, IL 60608

### Daley Center Divisions/Departments

- ○ Civil Division
  Richard J Daley Center
  50 W Washington, Rm 601
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Chancery Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Domestic Relations Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Civil Appeals
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Criminal Department
  Richard J Daley Center
  50 W Washington, Rm 1006
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ County Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Probate Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Law Division
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Traffic Division
  Richard J Daley Center
  50 W Washington, Lower Level
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

FILED
5/12/2023 8:18 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L004921
Calendar, R
22690844

**Summons for Discovery**                                    **(03/15/21) CCG 0514 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JORDAN ANCEL

|                                          Plaintiff(s)

vs.

JENNIFER KARUM and MONICA RUIZ

|                                          Defendant(s)    Case No. _____

                     and

PLEASE SERVE

RYAN ATKINS, 635 W Grace St

Apt. 1207, Chicago, Illinois 60613

Respondent in Discovery

### SUMMONS FOR DISCOVERY

To Respondent in Discovery:

YOU ARE HEREBY NOTIFIED that on ____//23____ , a complaint, a copy of which is attached was filed in the above, Court naming you as a Respondent in Discovery. Pursuant to the Illinois Code of Civil Procedure Section 735 ILCS 5/2-402 and Supreme Court Rules 201 et. seq., and/or Court Order entered

on _____ , the above named Plaintiff(s) are authorized to proceed with the discovery of the named Respondent(s) in Discovery.

YOU ARE SUMMONED AND COMMANDED to appear for deposition, before a notary public (answer the attached written interrogatories), (respond to the attached request to produce), (or other appropriate discovery tool).

We are scheduled to take the oral discovery deposition of the above named

Respondent, _____ on _____ , at the hour

of _____  ○ AM  ○ PM, at the office _____ ,

Illinois, in accordance with the rules and provisions of this Court. Witness and mileage fees in the amount

of $ _____ are attached (or) (serve the following interrogatories, request to produce, or other

appropriate discovery tool upon Respondent, ____RYAN ATKINS____ to be answered

under oath by Respondent, ____RYAN ATKINS____ and delivered to the office

of ____LOFTUS & EISENBERG, LTD.____ , Illinois, within 28 days from date of

service).

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

**..LING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with ..n e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

### TO THE OFFICER/SPECIAL PROCESS SERVER:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement or affidavit of service and fees and an endorsement or affidavit of payment to the Respondent of witness and mileage fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

Date of Service _____
(To be inserted by officer on copy left with Respondent or other person.)

Dated: _____

5/12/2023 8:18 AM IRIS Y. MARTINEZ

Atty. No.: 64600

Witness: _____

Name: LOFTUS & EISENBERG, LTD.

Atty. for: PLAINTIFF

Address: 161 N. CLARK, SUITE 1600

City: CHICAGO

State: IL   Zip: 60601

Telephone: 312-889-6625

Primary Email: alex@loftusandeisenberg.com

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

### ALL SUBURBAN CASE TYPES

#### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

#### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

#### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

FILED
5/12/2023 8:18 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L004921
Calendar, R
22690844

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

JORDAN ANCEL, )
)
    Plaintiff, )
)
v. ) Case No. 2023 L
)
JENNIFER KARUM and )
MONICA RUIZ, ) JURY TRIAL DEMANDED
)
    Defendants. )
)
RYAN ATKINS, )
)
    Respondent in Discovery. )

### VERIFIED COMPLAINT

Plaintiff, JORDAN ANCEL, by and through his undersigned attorneys, LOFTUS &

EISENBERG, LTD., complains against Defendants, Jennifer Karum, and Monica Ruiz, as follows:

### I. PARTIES

1. Plaintiff, Jordan Ancel ("Ancel"), is an individual and resident of California.

2. Defendant, Jennifer Karum ("Karum"), is a resident of Cook County, Illinois.

3. Defendant, Monica Ruiz ("Ruiz"), is a resident of Cook County, Illinois.

4. Respondent in Discovery, Ryan Atkins ("Atkins"), is a resident of Cook County,

Illinois

### II. JURISDICTION AND VENUE

5. Jurisdiction over the Defendants is proper in the State of Illinois pursuant to 735

ILCS 5/2-209(b)(2) in that, at all relevant times, she has been a resident of Illinois.

6. Venue is proper in this county by virtue of 735 ILCS 5/2-101 in that Defendant is a

resident of Cook County, Illinois, and that the cause of action alleged herein occurred in this

County.

1

## III. ALLEGATIONS COMMON TO ALL COUNTS

7.      Ancel is a multi-award winning filmmaker.

8.      Ancel had a national reputation in the entertainment industry for his work over thirty-five years in producing, directing, and writing television programs, commercials, and movies.

9.      Ancel was hired by Karum and Atkins to co-produce Karum's feature film "The Unseen" (hereinafter "the Project") along with them.



10.     Ancel is a warm gregarious man who is adept at working with challenging creative people and bringing them together to work as teams.

2

11. Ancel's responsibilities on the Project included, but were not limited to, raising production funds, negotiating contracts with talent, negotiating rates for location rental and hotels, and overseeing operations on set during filming to ensure a smooth and easy film shoot.

12. Ancel raised $150,000 for production from private equity investors, negotiated the contract for the star of the film, R.J. Mitte ("Mitte"), and negotiated low rates for hotels and a restaurant location which included meal catering for cast and crew.

13. Ancel took charge of running the production while on and off set.

14. Atkins served as the film's Cinematographer while Karum was also a supporting actress in the film and were both unavailable to manage the operations and handle the challenges of producing a film.

15. The film came together neatly and is set for release on June 30, 2023, with a total budget of $700,000.

16. The Project includes celebrated actors including RJ Mitte (*Breaking Bad*), Christian Stolte (*Chicago Fire*), William Mark McCullough (*The Walking Dead*), Sue Cremin (*FBI*), Candice Rose (*Stranger Things*), Kimberly Michelle Vaughn (*Empire*), Ava Bianchi, and Rebekah Kennedy (*Law & Order: Special Victims Unit*).

17. On April 17, 2022, the first day of the shoot, it was readily apparent that Karum and Atkins were neither sufficiently experienced nor equipped to manage the full scope of production.

18. Karum and Atkins had not budgeted properly to feed the cast and crew; they misrepresented the budget of the film to Ancel; they refused to address safety concerns on set; and Karum focused her efforts on playing the part of a movie star rather than doing the work of producing a film. Accordingly, the burden of managing the operations fell on Ancel.

19.     In the first round of production in April 2022, while Karum's role in producing the film fell off and Ancel's picked up, a rift developed between the two. The rift between them was exacerbated by Karum's hostility towards the crew which, unfortunately, resulted in the crew taking sides in the dispute and aligning with Ancel.

20.     During the second part of the film shoot in June 2022, Karum's behavior grew even more extreme, and she engaged in fierce verbal altercations with cast, cast's family members, and crew.

21.     In mid-June 2022, Mitte, Kennedy, numerous crew members, and their family members told Ancel that if Karum was not banned from set, then a walkout would occur, thus jeopardizing the completion of the film and the investments by all the investors.

22.     Ancel was able to convince Karum to absent herself from the set and the work was completed without her emotional outbursts derailing the production.

23.     Despite consenting to leave the set, Karum peppered staff and cast with vicious text messages airing her grievances for being excluded from the production due to her inability to control her emotions.

24.     Karum's erratic and uncontrolled emotional outbursts continued into the night and she gained illegal entry into three hotel rooms belonging to Mitte, the Director, Vincent Shade, and Jeffrey Yearwood, an investor in the film whom Karum had never met personally and who was visiting Chicago to check out the production, by convincing hotel security that she was dropping off gifts which turned out to be small bags of chips and popcorn she took from set which were meant for cast and crew.

25.     When Karum was confronted about entering the hotel rooms she told Ancel, "If no one likes me, then I will end myself. I will end myself." Ancel immediately called Karum's

4

husband Paul Karum to warn him of the terrible state of his wife's mental condition and to seek help.

26. The threat was quickly discounted by those who know Karum because she habitually threatens suicide to try and manipulate those around her.

27. The production concluded in June with scenes filmed at a Chicago law firm without Karum being physically present.

28. Ancel and Mitte hosted a wrap party when production concluded which Karum was excluded from.

29. Ancel was content to shepherd the production to completion and move forward with no further discord with Karum.

30. Karum was incensed that she was not invited to the party or allowed to come on set and directed her anger at Ancel via a series of coordinated attacks on his reputation sent via text messages, social media direct messages, and upon information and belief verbally.

31. The statements were made with malice to retaliate for Ancel saving the production from Karum's outrageous behavior and make sure she was the only one who received credit for its later success.

32. Beginning in June 2022 and continuing to date, Karum published statements to numerous colleagues of Ancel on both coasts and elsewhere stating that he sexually assaulted her, that he sexually harassed her, that Ancel sexually harassed other female cast and crew members, that he was not to be trusted, that he did little for the Project, that he caused numerous problems on set, that he was "having problems" with other producers in Los Angeles, that he did not really have high level contacts in the industry, and that he is a terrible person.

33.     Karum, via text messages, direct messages, and phone calls further diminished Ancel's role as producer by stating that she did everything for the production. She also had conversations with Ancel's colleague, writer/director Amanda Gecewicz, who hired Ancel to produce a film of hers, stating the same. Karum further demanded of certain colleagues of Ancel that they not hire him nor refer him career coaching clients.

34.     Karum communicated the following false statements among many others:



Saw your post in thriving I know Jordan has helped with info, but he's a bad bad person, screws people and manipulated women! Be careful!

Careful with Jordan! He is def NOT one of the best producers out there In fact he's terrible with women, he is off his rocket when he doesn't get what he wants and thrives off his wife

35.     The defamation continues to date. When the Project is publicized on social media people will comment on the posts with some reference to Ancel, Karum them "friends" them and sends the derogatory direct messages about Ancel.

36.     Karum will also employ fake accounts to send the direct messages, so it appears as if there is a legion of individuals who despise Ancel as Karum does.

37.     Ruiz came to her friend's assistance and published the same wild claims about Ancel, calling him an abuser of women who could not be trusted.

38.     Ruiz published the following false statements, among others:



7

39.     Atkins is, at all times relevant, Karum's right hand man and, upon information and belief, published defamatory statements, echoing his compatriot's claims.

40.     The accusations against Ancel can be easily disproven by documents inaccessible to Defendants at the time of publication of the statements.

41.     The reality is that Karum cannot control her emotions, Ancel protected the Project from her wild emotions, and, in retaliation, she made up some wild stories to try and make herself look better after being kicked off her own production because she was impossible to deal with.

42.     Defendants made the defamatory statements with actual malice.

43.     Defendants' statements were published to at least: Jennifer Rudolph, Serge Martinenko, Lacianne Carriere, Dyna Mitte, Matt Gogal, Heather Vogt, Amanda Gecewicz, Vincent Shade, Karel Ramirez, Seth Chitwood, Mike Wallace, Sammi Robin, Helene Galek, and the investigation continues as to how far their false statements spread.

44.     Defendants' actions were taken in reckless disregard for the truth and resulted in defamatory statements.

45.     By alleging that Ancel sexually assaulted Karum, sexually harassed Karum and other female cast and crew members, and was the sole cause of any and all problems on set to turn

8

the cast and crew against Karum, that he verifiably did not commit, Karum and Ruiz have committed defamation *per se*.

46.     The statements imputing the commission of a crime were made by Karum and Ruiz.

47.     Ancel maintained an exemplary reputation in the community prior to these defamatory statements being made.

48.     Defendants' statements have not only caused extensive mental anguish, humiliation, and embarrassment, but Ancel's business is suffering as well with clients choosing to go elsewhere because of the retaliatory lies spread by Karum.

49.     The continued publication of these false statements causes Plaintiff ongoing irreparable harm.

## COUNT I
### (False Light Invasion of Privacy)
#### *Karum*

50.     Plaintiff repeats and realleges Paragraphs 1 through 49 of the Complaint as if fully restated herein as paragraph 50 of the Verified Complaint.

51.     Karum's actions in falsely portraying Plaintiff as a sexual harasser and incompetent producer placed the Plaintiff in a false light before the public.

52.     The false light in which Karum's conduct placed Plaintiff would be highly offensive to a reasonable person.

53.     Karum acted with reckless disregard for whether the statements were true or false.

54.     Karum had reason to know that Ancel was not a sexual harasser and incompetent producer and, instead, made the statements in retaliation for Ancel protecting the production from her wild emotional outbursts.

55.    As a result of Karum's conduct, Plaintiff was harmed and continues to be harmed in that he has experienced economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, harm to career.

WHEREFORE, Plaintiff, JORDAN ANCEL, respectfully requests that this Court enter judgment in his favor and against Defendant, JENNIFER KARUM for compensatory damages in an amount not currently ascertainable but believed to be in excess of $1,000,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

**COUNT II**
**(False Light Invasion of Privacy)**
*Ruiz*

56.    Plaintiff repeats and realleged Paragraphs 1 through 49 of the Complaint as if fully restated herein as paragraph 56 of the Verified Complaint.

57.    Ruiz's actions in falsely portraying Plaintiff as a sexual harasser and incompetent producer placed the Plaintiff in a false light before the public.

58.    The false light in which Ruiz's conduct placed Plaintiff would be highly offensive to a reasonable person.

59.    Ruiz acted with reckless disregard for whether the statements were true or false.

60.    Ruiz had reason to know Ancel was not a sexual harasser and incompetent producer and, instead, made the statements in retaliation for Ancel protecting the production from her friend's wild emotional outbursts.

10

61.     As a result of Ruiz's conduct, Plaintiff was harmed and continues to be harmed in that he has experienced economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, harm to career.

WHEREFORE, Plaintiff, JORDAN ANCEL, respectfully requests that this Court enter judgment in his favor and against Defendant, MONICA RUIZ for compensatory damages in an amount not currently ascertainable but believed to be in excess of $1,000,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

### COUNT III
### (Defamation)
### *Karum*

62.     Plaintiff repeats and realleged Paragraphs 1 through 49 of the Complaint as if fully restated herein as paragraph 62 of the Verified Complaint.

63.     Karum made false statements about the Plaintiff.

64.     The statements were defamatory because they harmed Plaintiff's reputation by lowering him in the eyes of the community and deterring the community from associating with him.

65.     The false statements were defamatory *per se* because the harm to Plaintiff's reputation is obvious and apparent on its face by claiming he was incompetent at his job and treated women poorly.

66.     Karum made an unprivileged publication of the statements to third parties.

67.     As a result of Karum's publication of false statements about Plaintiff, Plaintiff was harmed and continues to be harmed in that he has experienced economic and non-economic

11

damages, including emotional distress and mental anguish, harm to reputation, harm to career, and harm to his education.

WHEREFORE, Plaintiff, JORDAN ANCEL, respectfully requests that this Court enter judgment in his favor and against Defendant, JENNIFER KARUM for compensatory damages in an amount not currently ascertainable but believed to be in excess of $1,000,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

## COUNT III
### (Defamation)
#### *Ruiz*

68. Plaintiff repeats and realleged Paragraphs 1 through 49 of the Complaint as if fully restated herein as paragraph 68 of the Verified Complaint.

69. Ruiz made false statements about the Plaintiff.

70. The statements were defamatory because they harmed Plaintiff's reputation by lowering him in the eyes of the community and deterring the community from associating with him.

71. The false statements were defamatory *per se* because the harm to Plaintiff's reputation is obvious and apparent on its face by claiming he was incompetent at his job and treated woman poorly.

72. Ruiz made an unprivileged publication of the statements to third parties.

73. As a result of Ruiz's publication of false statements about Plaintiff, Plaintiff was harmed and continues to be harmed in that he has experienced economic and non-economic

12

damages, including emotional distress and mental anguish, harm to reputation, harm to career, and harm to his education.

WHEREFORE, Plaintiff, JORDAN ANCEL, respectfully requests that this Court enter judgment in his favor and against Defendant, MONICA RUIZ for compensatory damages in an amount not currently ascertainable but believed to be in excess of $1,000,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

## COUNT V
### Respondent in Discovery
#### *Atkins*

74.     Plaintiff repeats and realleged Paragraphs 1 through 49 of the Complaint as if fully restated herein as paragraph 74 of the Verified Complaint.

75.     Atkins has information essential to the determination of who should properly be named as additional defendants in this action.

76.     735 ILCS 5/2-402 provides in pertinent part:

> "The plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action.

> Persons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same manner as are defendants and may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action.

> A person or entity named a respondent in discovery may upon his or her own motion be made a defendant in the action, in which case the provisions of this Section are no longer applicable to that person."

13

77.   Plaintiff respectfully requests that the Court order Respondent in Discovery Ryan Atkins to answer the attached summons for discovery.

Respectfully submitted,

**JORDAN ANCEL,**
Plaintiff

By:   *Alexander Loftus*

One of His Attorneys

Alexander N. Loftus, Esq.
Ross Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St. Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
C: 312.772.5396
alex@loftusandeisenberg.com
ross@loftusandeisenberg.com

Firm No: 64600

Dated May 12, 2023

14

# VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to §1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he or she verily believes the same to be true.

JORDAN ANCEL

15

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

JORDAN ANCEL, )
)
      Plaintiff, )
)
      v. )     Case No. 2023 L
)
JENNIFER KARUM and )     JURY TRIAL DEMANDED
MONICA RUIZ, )
)
      Defendants. )
)
RYAN ATKINS, )
)
      Respondent in Discovery. )

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED to RYAN ATKINS

Plaintiff, JORDAN ANCEL, by and through his undersigned attorneys and pursuant to Ill. Sup. Ct. R. 214, requests that Respondent in Discovery, RYAN ATKINS produce for inspection and copying the following documents within twenty-eight (28) days hereof at the office of LOFTUS & EISENBERG, LTD, 161 N. Clark, St. Suite 1600, Chicago, Illinois 60601, or at such other location as the parties may agree.

### INSTRUCTIONS AND DEFINITIONS

1.      Communication" means any sending, receipt, or exchange of information or message(s) regardless of the form or medium used. It includes, without limitation, such things as correspondence, email, text messages, Gchats, Facebook Messenger, Signal Messages, iChats, SnapChats, faxes, telexes, telegrams, electronic mail, telephone calls, voice mail, recorded messages, meetings, nods of the head or other nonverbal signals, conversations, and face-to-face encounters, etc.

2.      "Document" means any printed, written, recorded or graphic matter of any kind whatsoever, whether on paper, floppy disk, hard disk, computer file, cassette tape, compact discs,

16

DVDs or any other medium. The term is intended to embrace every conceivable memorialization of any alphabetic characters, images (still or moving), sounds, symbols, figures, dollars, or computations (or any combination of same) and obviously includes, without limitation, such things as correspondence, memoranda, electronic mail, voice mail, answering machine or other recordings, handwritten notes, phone message slips, diagrams, charts, schedules, daily calendars, invoices, purchase orders, forms of any kind, spreadsheets, accounting records. Bank statements, canceled checks, check registers, compact disc, DVDs, envelopes, phone bills, faxes, and agreement or insurance policy, photographs, slides, sound recordings, videotapes, sketches, Internet web-sites, computer programs, tape-recorded telephone conversations, and anything stored on or accessible with a telecommunications device of any kind, a computer, computing device or any network. For purposes of illustration and not limitations, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills; statements; and other records of obligations and expenditures; books; brochures; bulletins; calendars; cancelled checks; vouchers; receipts and other records of payment; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; deeds of trust; deposit slips; diaries or drafts; emails; files; guaranty agreements; instructions; invoices; ledgers; journals; balance sheets, profit and loss statements; and other sources of financial data; letters; logs; notes; or memoranda of telephonic or face to face conversations; manuals; memoranda of all kinds, to and from an persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements or interviews; stock transfer ledgers; technical and engineering reports, evaluations; advice, recommendation, commentaries, conclusions, studies, test plans, manuals, procedures, data reports, results, and conclusions; summaries, notes and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of

testimony; UCC instruments; work papers; and all other writings, the contents of which relate to , discuss , consider, or otherwise refer to the subject matter of the particular discovery requested.

3.     The singular includes the plural and vice versa. The masculine includes the feminine and neuter genders. The conjunctive ("and") shall include the disjunctive ("or") and vice versa. "Any" shall also mean "all" and vice versa. The past tense includes the present tense (and vice versa) where the clear meaning is not distorted by change of tense. You are to produce all non-identical copies of each requested document and you are to produce all editions and drafts.

4.     Person" or "persons" shall mean all individuals and entities including, without limitation, all natural persons, sole proprietorships, organizations, associations, companies, holding companies, partnerships, joint ventures, limited partnerships, corporations, and/or any other individuals or entities having a separate identification recognized in law or in fact.

5.     "Including" or "includes" means "including, but not limited to" or "includes, but is not limited to."

6.     "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

## DOCUMENT REQUESTS

1.  Every communication to or from Monica Ruiz from April 1, 2022 to present.

2.  Every communication to or from Jennifer Karum from April 1, 2022 to present.

3.  Every communication to or from anyone referring or relating to Jordan Ancel from April 1, 2022 to present.

4.  Every communication to or from anyone referring or relating to the Unseen from April 1, 2022 to present.

5.  Every communication to or from Jennifer Karum referring or relating to Jordan Ancel from April 1, 2022 to present.

6.  Any and all documents referring or relating to Jordan Ancel.

18

7. Any and all communications referring to relating to Jordan Ancel.

8. An Affidavit of Completeness as required by Ill. Sup. Ct. R. 214.

Respectfully Submitted,

By:_ *Alexander Loftus*

One of Plaintiff's Attorneys

Alexander Loftus, Esq.
Ross Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark Suite 1600
Chicago, Illinois 60601
p: 312.899.6625
c: 312.772.5396
alex@loftusandeisenberg.com
ross@loftusandesienberg.com

Firm No: 64600

Dated: May 12, 2023

19